Good morning. I'm Laura Fitzsimmons. I would like to reserve three minutes for rebuttal. I appear before you today on behalf of Jim Himes, who is appealing to you to reverse the denial of the order dismissing his complaint against numerous defendants for acts that were clearly in violation of his clearly established constitutional rights. There are many issues and there's little time. If there's specific issues that you would like me to address, I would appreciate. Well, one of them. Thank you for the invitation. One of them that interests me is the landmark appraisal. And the district court found that the statute of limitations had run on that. And your client's position seems to be that he didn't know or wasn't fully aware of the impact of that. Until within this, the time frame that would make his complaint on landmark timely. Why don't you start with that? Thank you, Judge Hawkins. Really, the landmark complaint, if you view it as there, I think when I prepared for this argument, I looked again at my claims that the entire landmark, all of the actions in landmark were not time barred. Really, they're not time barred for if it's found that the complaint was similar to malicious prosecution, because landmark, contrary to what the judge said and the appellees have argued in their brief, landmark never went to hearing. It was ultimately dismissed. The statute time period we're dealing with is what? Two years. It's a two-year statute. When was the landmark complaint filed? The landmark complaint was filed prior to that. I was sort of looking for a date. Oh, okay. I have it. I actually have a great timeline. But hang on. The statute began to run, oh, November of 2002, the formal landmark complaint. And at some point, your client hired counsel, didn't he? Yes, it was me. And when did that happen? Just a record. All my questions are addressed to what's in the record. Absolutely. And the record shows that a writ, a state writ was filed staying those proceedings, which was granted in December 2002. Okay. My question was, we now, you've told us when the complaint was filed. When did Mr. Himes hire you? With respect to landmark. Mr. Himes hired me with respect to landmark prior to the complaint being filed or as the complaint was filed. So that would have been November 2002. Doesn't the fact that he consulted you about that complaint even before it was filed suggest that he knew it might have adverse consequences? I agree with that. And that's kind of where I was leading. Doesn't that go to the knowledge element? I think it goes to the knowledge element. I think what it doesn't address are two things, which is, initially, this was a single complaint that led to a damage that occurred really much later and certainly within the statutory period. Secondly, even if the landmark allegations were time-barred and there could be no remedy for those acts that occurred prior to February 8, 2003, one of the things that the district court found was that the allegations against the MDOT defendants had not been adequately pleaded. Therefore, they were entitled to quasi-immunity. I think under R.K. Ventures and under Amtrak, which R.K. Ventures cites, we're certainly entitled to put those landmark allegations into this complaint because, really, it puts everything in context. If you look at this complaint, we may actually not be entitled to any remedies for what happened to Hines because of landmark. But you need, in my – Your argument is that it forms a single conspiracy. You might not claim independent damages from landmark because those might be time-barred. But you're entitled to use those events to prove your conspiracy. Is that what you're saying? Thank you, Judge Thomas. That's what I am trying to say. So as to the landmark claim, you know, you need the whole context in order to show the intent. As to the banter claim, even the district court judge here found that that was not time-barred. Under State law, the confusion comes with the idea of complaints. There were the MDOT complaints. Those are secret complaints under State law. Mr. Hines did not know the identity of the people who had filed the banter complaint until the formal complaint was filed. And he did not know, obviously, the identity of the investigator either. So the banter complaint would not be time-barred. The banter complaint would also not be res judicata. The MDOT defendants filed a secret complaint. That complaint was taken by the real estate division, never investigated, which is very clear even from the briefs that are before you. No one ever investigated the MDOT complaint, even though there was – it's not a discretionary act. There's a statutory mandate for an impartial investigation, which never occurred. But in any event, the actual formal complaint, which was filed in the banter case, mirrored many of the MDOT allegations. But the ultimate determination by the commission was – they basically – well, they found no merit to any of the complaints or allegations made by the MDOT defendants. They, in fact, found really no violations based on even the charging document. What occurred, as is stated in the complaint and is clear from the record, is that Chairman Wright, who was an appraiser, who was the chair of the commission, found a violation based on really the opposite of what the MDOT defendants had alleged. He found a violation based on the exclusion of certain facts from an income valuation and a different cap rate. So in this case, the issue of ratio cotta, in order to proceed in this case, Mr. Himes does not have to undermine or challenge or impugn the determination made by the real estate commission. That was done by the real estate commission when it went through every single allegation. Well, he does to the extent that he's trying to complain about the effect of it, that is, in the subsequent litigation where he was apparently impeached as an expert witness because of this determination by the commission. And I think there may be an issue there. I don't know that it's before us today. But I don't know that you can say that he's not effective anymore and isn't getting hired as a witness because he's got this black mark on the record, because the black mark is on the record. It may not have been what the MDOT defendants complained about in the beginning, but the black mark is still there. And I don't know that you can do anything to remove the black mark because of ratio cotta. So I think the issue is there. I just don't know that it's here at this stage. Well, the issue is something that we struggled with because – oh, I'm running out of time – because really what happened, if you look at the State law and if you look at even what's attached to the complaint, this commission said we should never have gotten here. There should – you know, they went on and on about how they never should have gotten here. And really, they did not want Hines. They specifically said we don't want him to suffer. We don't want him to have any ill effects of these proceedings on his ability to testify as an expert witness. The chair of the commission said this is simply a mistake. If I looked in my files, there would be many similar mistakes. So really what happened is if you look – and it's in the record – if you look at what we received from the commission, it says there are fines. There should be no discipline. Under State law, really, the proceedings should remain confidential because it's only if there's discipline, then the disciplinary – if they impose discipline, then the disciplinary proceeding becomes a public record. That wasn't what happened here for many reasons, including just the insular nature of the Nevada appraisal community and the interrelationships between the people involved in this case. I agree that there may be a chance – I mean, I think in reality, Mr. Hines will always suffer from what occurred to him. But he – that is, I believe, a distinct issue from the relief he is requesting, which is to – oops. Can I – I'm sorry. I'll repeat. No. Just finish up your thought, and we'll give you a couple of minutes for rebuttal. Thank you. Go right ahead. Finish your thought. The relief that Jim Hines is requesting is to vindicate his constitutionally protected rights, to due process, to a fair investigation, to speak against the government. This is a witness who spoke in favor of landowners, testified in favor of landowners against the government. And what the government did is hijack the disciplinary proceedings that were only available to the government as a party in the state action to silence a witness. That is so profoundly troubling, and that had such profound detriment to Mr. Hines, as others, but certainly Mr. Hines is the only one seeking to vindicate those rights, that I believe that if this case were permitted to proceed, the issue and discovery were to be permitted, the issue of those findings, that one finding made by Chairman Wright with a determination of no discipline, would relieve many of the disabilities that Mr. Hines remains suffering as a witness. Thank you. All right. Thank you. We'll give you a couple of minutes for rebuttal. Thank you. Counsel? Counsel, counsel, judges of the Ninth Circuit Court of Appeals, it's an honor to be here. My name is Daniel Wong. I am the Chief Deputy Attorney General assigned to and Chief Counsel for the Nevada Department of Transportation. I'll begin my argument by focusing on the questions that you asked of Ms. Simmons. It is absolutely clear that anything having to do with the landmark complaint is, in fact, time barred, because the formal complaint was, in fact, filed on November 7, 2002. And the case law is very, very clear that the statute begins to run when the person knows or has reason to know of the injury. He clearly knew or had reason to know of the injury when the formal complaint was filed with the appraiser commission. And, again, you also know that he had counsel prior to that point in time. He served with the complaint. Do you know? He was served with the complaint. It was officially filed on November 7, 2002, and he was sent a letter on it, and he signed acknowledgment very shortly after November 7, 2002. Very shortly after November. Because that's what you do when you file a formal complaint. Sometimes you don't. That's why I asked. And it was very clear. He signed an acknowledgment. In fact, he even got a letter very shortly after the Department of Transportation submitted the grievance to the Real Estate Division for investigation. Very shortly thereafter, as a matter of fact, it was three days after, the Nevada Department of Transportation defendant submitted the grievance to the Real Estate Division for investigation on June 23, 2000. Seven days later, the Real Estate Division notified Mr. Hines that a grievance complaint had, in fact, been filed. But I acknowledge that it's the filing of the formal complaint on November 7, 2002, that begins the statute of limitations. Mark, can I ask a couple of questions just by way of background? We're basically at the heart of Mr. Hines' complaint are two appraisals, correct? Yes. Landmark and Banter. Yes. In Landmark, Hines appraised the building at $1.8 million, right? Roughly. Roughly. And your client, the State, the Department of Transportation, appraised it at $990,000. The appraiser hired by the Department of Transportation. Okay. And you settled the case for $1.9 million. Correct. That's right. That's my understanding. And on Banter, you settled the case after initially offering $80,000 for the property. The State wound up settling for $950,000, right? That's my understanding. What was Hines' appraisal on Banter? What was the dollar number? Unfortunately, I don't know the answer off the top of my head. Maybe counsel can tell us on or above. But I would argue, Your Honor, those Let me finish up my thought and you can understand where I'm headed and maybe you can stop me, direct me, misdirect me, whatever you'd like to do. I began my legal career working for a lawyer who did condemnation work, both for private landowners and as a specially appointed Arizona Assistant Attorney General on behalf of the State of Arizona. And it is absolutely not uncommon in condemnation cases for the landowner to bring in an appraiser. The government brings in an appraiser. And if you can agree, great. If you can't, it goes to the jury and the jury decides. And it's not uncommon for juries to accept the State's offer. It's not uncommon for them to accept the appraiser's offer. It's also not uncommon for them to strike somewhere in the middle. But the heart, it seems to me, of the Hines complaint in this case is that the State of Nevada was not content to cross-examine Hines on the stand under oath about the bases for his appraisals. They paid the money at or near, in some instance, above what he recommended and then proceeded to file complaints internally about him. Am I wrong about that? What happened, happened. The jury verdict is the jury verdict. The Department of Transportation's decision to settle the Lampa case, settle the Banner case, happened. What I'm talking about are not jury verdicts. The State of Nevada agreed to settle both cases before they ever went to a jury, before, as I understand it, Hines ever took the stand and defended his appraisal, and settled for dollar figures that were at or above what he appraised the property for. Am I right? The amount that they settled for included attorney's fees. So it is greater than his particular appraisal. I'm at my point, and that is, is it my impression incorrect that what happened at bottom here is that the State of Nevada was not content to cross-examine Hines on the stand about the bases for his appraisals, but used internal disciplinary processes to discourage him from testifying at all. That was not the attitude in the Nevada Department of Transportation. If they thought his appraisals were so wrong, why didn't they take it to a jury? It wasn't so much of the matter they thought the appraisals were wrong. It's that he committed unprofessional conduct in doing the landmark appraisal, violated the professional appraiser's standards in preparing the landmark appraisal, in preparing the Banner appraisal. That type of unprofessional conduct may not, in fact, be effective for a jury, but certainly still violate the uniform appraisal professional standards. And that's why the Department of Transportation filed these complaints and documented it. So the department was uncomfortable with its ability to use these unprofessional acts that you claim Hines engaged in to discredit his testimony under oath in front of a jury, but you thought it would work, not you, but your client thought it would work in the disciplinary process. That makes utterly no sense to me. Your Honor, I argue that there's a difference between what's going to be effective in front of a jury with regard to the presentation of an eminent domain case versus looking objectively at the uniform appraisal standards and determining whether or not an appraiser has, in fact, violated those standards. And in Banter, he did. You're talking about differences on capitalization rate analysis? Pardon me? I mean, as I recall, one of the problems they had was his cap rate analysis, right? The appraisal commission found – Why isn't that a matter of cross-examination? You're talking as opposed to – that's a matter of professional difference, not professional discipline. The appraiser commission found a violation of the uniform appraisal standards and found him – that he had violated, in six instances, the professional conduct. Yeah, and they also said it was something that appraisers do all the time. In fact, the chairman of the commission said on the record, didn't he, that these were the kinds of things that should not affect the quality of an appraisal. In fact, the things that they found were violations were not the things that your client complained of, right? I disagree. I mean, that's not – even in the excerpts of record and the evidence provided by the appellant's counsel, she cites the fact that the counsel for the appraiser commission kept the appraiser commission on track with regard to the complaints made by the Department of Transportation in their complaint for unprofessional development and told them that they could not go outside of that. And that's exactly what they did. So the instances of unprofessional conduct found by the appraiser commission were, in fact, raised by the Department of Transportation in their complaint for unprofessional conduct. Did the commission find that Luboway – is that how you pronounce it? Lubowy. Luboway's investigation was, quote, woefully inadequate. That's what Chairman Wright said. And did the commission also state that the matter should never have proceeded to a formal hearing? He said that because there are three options pursuant to the Nevada Administrative Code with regard to what a real estate administrator can do. One of them is to go to the advisory committee. Mr. Wright thought, well, after reviewing all this, this should have gone to the advisory committee. However, the Administrative Code also says, and it's within the discretion of the real estate division, is you can go to the advisory committee, you can go to a hearing, or you can attempt to negotiate. Did the commission discipline Himes? Pardon me? Did the commission discipline Himes? The commission voted to not impose any discipline. Answer my question. Yes. No, they didn't discipline him. They voted not to impose any specific discipline on Mr. Himes. We're here on – On Mr. – yes, on Mr. Himes. We're here on a dismissal. The court and the lower court granted a motion to dismiss. So we assume the well-pled facts of the complaint are true. That have basis. I mean, they have to be concrete facts. They can't be just things made out of – the law is very clear. They have to be some concrete facts. Judges, I promised Mr. Gwinn I'd give him some time. He's got 50 seconds. I'd answer a real quick question if he has. But our position is set forth in the complaint. Why is the entry – we're talking about actual entry. In this case, it's a constitutional entry, so it's a stigma plus. In other words, a reputation damage or property damage. Why is that measured from the date the complaint is filed rather than when the reputation damage occurs? Because the law says that it accrues – I mean, it accrues from the date the statute of limitation begins. Right. But under federal law, the statute starts running from the time of the constitutional entry. In this case, the constitutional entry is the stigma plus, the reputation damage, or the property damage that occurs to his goodwill. So that didn't occur when the complaint was filed, did it? Well, it – Arguably, it occurred sometime later when he was – when he discovered that his reputation had been damaged and he was losing his occupation. You've got to keep in mind here, he had full opportunity. He was represented by counsel at the Banner complaint. It was a 10-day hearing. I'm talking about when the damage accrued, not when – not when – when they hired counsel. So the Banner – the appraiser commission issues its finding of fact, conclusions of the law, and decision when it did. And that's the date that they officially – they filed a formal written decision finding him guilty of unprofessional conduct. So I would agree with – if you want to look at it that way, that's the date that there has been an official complaint. I think the question remains, you can't point to Banner to answer why Landmark is barred by the limitations period. Well, we argue that Landmark is barred. And Judge Jones found that Banner was not barred by the statute of limitations defense. But we've said – But then you've got Judge Thomas's question all over again, because you can't tell us what happened in Banner as a way to explain why Landmark is barred. The bottom line is, is that the qualifying immunity and the absolute immunity is – provides – is applicable to the NDOT defendant, NDOT meaning Nevada Department of Transportation, the real estate division and appraiser commission defendants, and the witnesses. The law is very clear. This is a poster child for why there's absolute immunity for prosecutors and judges and witnesses, and qualifying immunity – It could be a poster child, but I'm not sure that's what it's a poster child for. Well, clearly, their law is very clear that government can, in fact, regulate certain professions, including doctors, dentists, and appraisers. And they're not challenging the constitutionality of the Nevada Revised Statute and Nevada Administrative Code, which sets forth this clearly identified procedure for evaluating and reviewing the actions of appraisers. I'm going to give your colleague a couple of minutes to argue on his own, but I have a question for you, speaking of clear law and that sort of thing. Is there any law anywhere in the jurisprudence of the Federal system that allows absolute immunity for, quote, private expert witnesses? I believe the Briscoe case from the United States Supreme Court talks about all the policy reasons why – I'm talking about investigation, preparing reports, that sort of thing. Well, that's – the Wren and Nuvali in this case clearly went beyond that. They were retained, and the contract says that if you review the Appellant's Excerpt of Records – and I'm not saying necessarily you should, because those are records that were part of the motion for judicial notice – but it clearly says in there that you're being retained to do an evaluation of an appraisal and provide expert testimony at the commission hearing if necessary. So they clearly went beyond just investigation. They were designed to be witnesses. Okay. Thank you. I'm going to put two minutes on the clock, please. Counsel? Good morning, Your Honors. It is a pleasure to be here. This is my first time before in the Ninth Circuit, and so far it's been a very enjoyable experience. Since we're here today talking about due process, I will try to be brief and be respectful of the time limitations we have. It's difficult to encompass this wide-ranging case in two minutes or to cover everything, but my client's little slice of this case comes down to two facts alleging the complaint – a January 2002 allegation that he assisted in the drafting of the Banner complaint, and secondly an allegation that he engaged in some type of ex parte communication with the chairman of the appraisal commission. That is the entire extent of Bill Kimmel's involvement in this. Since that time, these complaints have been processed administratively in Nevada. Ms. Fitzsimmons, who has been representing Mr. Himes throughout this process, has taken this matter to two different state courts and has taken it to the Nevada Supreme Court, and here we are today in front of the Ninth Circuit after the district court has already made its decision on this case, still talking about this. My client can't help but note the incongruity of the situation of being sued by a direct competitor on the claim that he deprived that person of due process, yet he is the defendant in a lawsuit in Federal court in which he has the same claims, he has the same interests that Mr. Himes is claiming were offended by Mr. Kimmel. I think, Judge Hawkins, you said it best toward the end of your comments earlier where you talked about the standard for a motion to dismiss. We have to assume that well-pledged facts in the complaint are true. We agree. And the lower court in this case listened to extensive argument and saw an extensive record on this and determined that the well-pledged facts at least is against Bill Kimmel. Don't say anything. They're bare allegations. No, but they did play joint action. And so to the extent there might be some derivative liability in joint action, there's a theory there. We're talking about dismissal of the pleadings. Agreed, Your Honor. There is a theory. However, there is a baseline standard that has to be achieved, a threshold. In other words, while baseless accusations can form the basis for a lawsuit, I think we'd all agree on that. Actually, I wouldn't. Baseless is a factual evaluation that we don't make at this stage. And we take the complaint as pled that summary judgment is a different matter. But, Your Honor, it might be a matter of semantics, and I want to make sure I'm not being misled. But if you plead joint action, if there's a joint action theory, why doesn't it survive a motion to dismiss against a private actor? Because you have to do more than just say there was a joint action. You have to identify some facts or circumstances that comprise that joint action. And so the defendant has an opportunity to respond and deal with it appropriately, even at the pleading stage. My understanding is that the basis for your client's dismissal was derivative immunity? That was one of the bases. We would argue that the basis equally applicable to the state actors with whom he is alleged to have conspired also apply to Mr. Kimmel. If we were to conclude that Wren and Luboway or Lubway were not entitled to immunity, we would have to conclude that your client is not entitled on this complaint to derivative immunity, correct? Not necessarily, Your Honor. And that's because Mr. Kimmel played a different role than Wren and Luboway did. They were hired by the state to do some investigation, potentially to testify as experts. Mr. Kimmel's involvement is much more remote than that. His claim is the claim against his is simply that he somehow assisted, we don't know how, in the preparation of the Banner complaint. He didn't file a complaint. He didn't testify. He didn't do any investigation. That raises the other issue as to whether state action as required by Section 1983 and Section 1985 even exists. Is he a state actor? Can he even be charged with those violations, constitutional violations under these circumstances? Okay. You're over your time. Thank you for coming down this morning. Thank you. Appreciate your argument. Counsel, is there anything you're dying to tell us? There are many things that I will restrict you to. I will restrict it. I think you asked a question about Banter. Yes. And I don't have an answer. Other than in Banter, I know that Mr. Himes' appraisal was more than ENDOT ultimately settled for. However, the settlement was closer to Mr. Himes' number than the ENDOT number, which was a question you had. And I just would like very quickly just to clear up, there's so many factual misunderstandings even stated today by counsel. There was only one finding of malfeasance by this commission. The other six findings of fact were like, you know, Himes is a resident of Nevada. I mean, they were facts that were facts, but that carried no – it didn't lead to discipline. I had the full Banter disciplinary proceedings. That was one of the things I asked the judge to take notice of. He would have seen that. He would have seen that discussion. He would have seen that none of the ENDOT allegations, none of them were found to have any merit by this commission. I think I'm done now. Thank you. Thank you. Thank you both sides for the argument. Appreciate it. The case just argued will be submitted for decision, and the Court will stand at recess for the day.
judges: Hawkins, Thomas, Clifton